**Jimmy R. WOODS, individually and on behalf of a class of all others similarly situated, Plaintiff,**

v.

**SOUTHERN COMPANY, et al., Defendants.**

**Civil Action No. 1:04–CV–1912–RWS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 4, 2005.

1352

Derek W. Loeser, Lynn Lincoln Sarko, Tobias J. Kammer, Keller Rohrback, Seattle, WA, Richard S. Schiffrin, Gerald D. Wells, Joseph H. Meltzer, Schiffrin & Barroway, Radnor, PA, Joshua A. Millican, Law Office of Joshua A. Millican, Atlanta, GA, for Plaintiff.

Bridget Bobick, J. Kirk Quillian, Jaime L. Theriot, Troutman Sanders, Atlanta, GA, Paul Blankenstein, Paul DeCamp, William J. Kilberg, Gibson, Dunn & Crutcher, LLP, Washington, DC, Thomas W. Curvin, Sutherland Asbill & Brennan, LLP, Atlanta, GA, for Defendants.

## ORDER

STORY, District Judge.

This case comes before the Court on the Southern Company Defendants' Motion to Dismiss Plaintiff's Amended Complaint [27] and Plaintiff's Motion for Leave to File Supplemental Brief [58].[1] Plaintiff's

1. For purposes of this Order, the "Southern Company Defendants" are the Southern Company, Southern Company Services, Inc., the Southern Company Employee Savings Plan Committee, the Pension Fund Investment Review Committee, Michael D. Garrett, Charles D. McCrary, David M. Ratcliffe, H. Allen Franklin, Elmer B. Harris, Robert A. Bell, W. Dean Hudson, Ellen N. Lindemann, Christopher C. Womack, R. Craig Elder, Thomas A.

Motion for Leave to File Supplemental Brief [58] is **GRANTED** *nunc pro tunc.* For the reasons that follow, the Southern Company Defendants' Motion to Dismiss [27] is **GRANTED in part and DENIED in part.**

## Background

Plaintiff, a former employee of the Southern Company and a participant in the Southern Company Employee Savings Plan (the "Plan"), initiated this putative class action on June 30, 2004. He alleges that Defendants, in their capacities as fiduciaries of the Plan, violated the duties imposed on them by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. The factual allegations underlying this controversy, taken from the Complaint[2] and presumed true at this stage of the litigation, are as follows:

## I. Defendants, and their Roles *vis-a-vis* the Plan

Plaintiff brings this action against, *inter alia,* the Southern Company ("Southern"), Southern Company Services, Inc. ("SCS"), the SCS Board of Directors (the "Director Defendants"), the Southern Company Employee Savings Plan Committee (the "ESP Committee"), and the Pension Fund Investment Review Committee (the "PFIRC").

Southern, according to the Complaint, exercised responsibility for the management of the Plan's assets, as well as the appointment of Plan fiduciaries, including the Employee Savings Plan Committee ("ESP Committee") members. (*See* Am. Compl. ¶¶ 14–15, 76–77.) Plaintiff further alleges that Southern was charged with communicating with Plan participants about the Plan. (*Id.* ¶ 78.) By virtue of the foregoing, Plaintiff contends that "Southern exercise[d] discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets." (*Id.* ¶ 15.)

SCS, a Southern subsidiary and the Plan's Sponsor, is alleged to have exercised responsibility for the management of the Plan's assets, and the appointment of Plan fiduciaries, including the Trustee. (*Id.* ¶¶ 16–18.) Furthermore, Plaintiff alleges that at least some Plan documents indicate that SCS is the Plan's Named Investment Fiduciary. (*Id.* ¶¶ 80–81.) Plaintiff likewise asserts claims against the SCS Directors, whom Plaintiff alleges were responsible for the appointment, supervision, and removal of other Plan fiduciaries, and were the actors through which SCS carried out its Plan duties. (*Id.* ¶¶ 19–25, 82–84.) According to the Complaint, SCS and its Directors were able to "exercise[ ] discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets." (*See id.* ¶¶ 18–19.)

The ESP Committee, Plaintiff alleges, was a named fiduciary of the Plan, and was tasked with the "duty to administer the Plan[.]" (*Id.* ¶¶ 26–31, 85–88.) In particular, the Plan vested the ESP Committee with the "discretionary authority, power, and duty to[, *inter alia,*] take all actions and to make all decisions necessary or proper to carry out the Plan and to control and manage the operation and administration of the Plan." (*Id.* ¶ 85.) The ESP Committee was also responsible for communicating with participants, and

Fanning, Robert M. Gilbert, Carson B. Harreld, William B. Hutchins, Kathleen S. King, Ronnie R. Labrato, Michael W. Southern, Kirby R. Willis, Gale E. Klappa, and Allen L. Leverett.

**2.** The "Complaint," as used herein, refers to the Amended Complaint [21] filed by Plaintiff on December 6, 2004.

providing participants with the information and materials required by the Plan and/or ERISA. (*Id.* ¶ 87.) By virtue of these powers, Plaintiff contends that the ESP Committee "exercised discretionary authority or management of the administration of the Plan." (*Id.* ¶ 88.)

In addition, Plaintiff brings suit against the PFIRC—a Committee established by the SCS Board, comprising select senior officers of companies within the "Southern family." (*Id.* ¶ 32.) According to the Complaint, the PFIRC had responsibility under the Plan for selection and elimination of Plan options, and investment and management of the Plan's assets. (*Id.*)

## II. The Nature of the Plan

The Southern Company Employee Savings Plan is, according to the Company's Form 11–K, a "defined contribution plan" designed to serve the retirement needs of its full and part-time employees. (*Id.* ¶¶ 49–52.) The Plan is funded by employee contributions (in the form of reductions to their salary and/or additional, voluntary contributions), which the employees may direct into one or more of the Investment Funds selected and provided by the PFIRC, and "Employer Matching Contributions," which are invested in the Southern Company Stock Fund. (*Id.* ¶¶ 53–55.)

## III. The Establishment and Decline of the Mirant Stock Fund

Mirant Corporation ("Mirant"), a long time subsidiary of the Southern Company, is a business engaged in unregulated energy trading. (*Id.* ¶¶ 101–03.)[3] Mirant became a publicly traded company in 2000 by offering approximately 20% of its stock in an initial public offering ("IPO"). (*Id.* ¶¶ 102–04.) The following year, Southern "spun-off" its remaining interest in Mirant by providing existing Southern shareholders with fractional shares of Mirant stock.

(*Id.* ¶¶ 56, 106.) Because the Plan held a considerable amount of Southern stock, it, by virtue of the spin-off, acquired a significant interest in Mirant. (*Id.*) This newly acquired Mirant stock was held by the Plan in the "Mirant Stock Fund." (*Id.; see also id.* Ex. C, at § 8.8 ("All Mirant stock received by the Plan pursuant to sections 9.1(c) and 9.1(d) shall be held in a 'Mirant Stock Fund.'").)

Participants in the Plan were permitted to transfer funds out of the Mirant Stock Fund and into other investment vehicles offered by the Plan. (*Id.* ¶ 59.) At least initially, however, they were not permitted to acquire additional shares of Mirant stock. (*See id.* Ex. C, at § 8.8; *compare* Am. Compl. ¶ 143.) Furthermore, the Plan, in a so-called "sunset" provision, required that the investment in the Mirant Stock Fund end by no later than the fifth anniversary of the date the stock was first acquired by the Plan. (*Id.* Ex. C, at § 8.8.)

Although Plaintiff's estimate regarding the exact value of the Plan's investment in Mirant has varied throughout this litigation, he has consistently alleged that the Plan's initial Mirant holdings were worth hundreds of millions of dollars. (*See, e.g., id.* ¶ 8.) Due to a public scandal involving allegations of illegal manipulation of the unregulated energy market and unlawful trading and accounting practices, however, the value of Mirant's stock, and thus, the value of shares within the Mirant Stock Fund, suffered a serious decline. In May of 2003, Mirant released year-end financial results for 2002, posting a loss of $2.44 billion. (*Id.* ¶ 138.) Following public commentary questioning the viability of the company, moreover, Mirant's stock price fell to $2.01 per share (off a one-time high of $47 per share), and on July 14, 2003, Mirant announced that it would file for Chapter 11 bankruptcy protection. (*Id.*

---

**3.** Mirant was formerly known as Southern Energy, Inc.

¶¶ 138–40, 148.) The value of the stock continued to decline following this announcement, and in July 2003, dipped below $0.25 per share. (*Id.* ¶ 141.) At that point, fiduciaries overseeing Mirant's own defined contribution savings plan informed plan participants that the plan's holdings in Mirant stock were going to be liquidated. The Southern Plan, however, continued to hold its investment. (*Id.*)

## IV. Defendants' Alleged Wrongs

Plaintiff contends that Defendants were aware (or, through a reasonable investigation, should and would have been aware) of the scandalous activities taking place at Mirant by virtue of the longstanding relationship between Mirant and Southern, including during times when such illicit activities were taking place; Southern's provision of various services to Mirant while the spin-off was effectuated; ongoing interaction between the companies following the spin-off; and various public reports concerning the allegedly unlawful practices within Mirant. (*Id.* ¶¶ 7, 110, 123–24, 147–49, 152, 183–85.) Notwithstanding this awareness of improprieties, Plaintiff asserts that Defendants continued to allow the Plan to maintain its significant investment in Mirant stock, and failed to communicate their knowledge to other Plan actors and participants.

In particular, Plaintiff's Complaint asserts three causes of action against Defendants. In Count I, he alleges, *inter alia*, that the ESP Committee, the PFIRC, SCS and Southern failed to prudently and loyally manage Plan assets by maintaining the Plan's investment in Mirant stock when it no longer was prudent to do so, or to conduct an appropriate investigation into the merits of continued investment in the stock even in the face of obvious "red flags." (*Id.* ¶¶ 150–155, 180–185.)

In Count II, he alleges that Southern, SCS, the Director Defendants, and the PFIRC breached their monitoring duties under ERISA by failing to adequately supervise their appointees and ensure that they prudently managed the Plan's investment in Mirant stock, and also by failing to provide their appointees with critical information regarding Mirant's financial condition. (*Id.* ¶¶ 167–169, 193–203.)

Finally, in Count III, Plaintiff alleges that Southern, SCS, the ESP Committee and the PFIRC failed to provide Plan participants with complete and accurate information regarding the true risks of investing in Mirant stock as a result of Mirant's illegal practices, as well as regarding Mirant's true financial condition, and, instead, provided inaccurate information, which Defendants knew or should have known would have an extreme impact on the Plan and participants' retirement assets. (*Id.* ¶¶ 156–161, 205–209.)

In addition to requesting declaratory relief, costs, and fees, Plaintiff asks that Defendants be compelled to "make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties ... and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligations[,]" and seeks "[a]ctual damages in the amount of any losses the Plan suffered, to be apportioned among the Participants' individual accounts in proportion to the accounts' losses[.]" (*Id.* at Prayer for Relief §§ C & F.) Furthermore, he requests the imposition of a constructive trust, restitution, and an "Order enjoining defendants, and each of them, from any further violations of their ERISA fiduciary obligations." (*Id.* at §§ D, E & I.)

On February 7, 2005, the Southern Defendants moved to dismiss the Amended Complaint. Both sides have now submit-

ted well-prepared briefs respecting various aspects of Plaintiff's claims. For the reasons that follow, the Court finds that, although certain facets of Plaintiff's claims are not viable, he is entitled to pursue each of the Counts alleged in the Complaint through discovery.

## Discussion

## I. Procedural Standard

### A. Generally

Federal Rule of Civil Procedure 12(b)(6) empowers the Court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. The pleadings are construed broadly so that all facts [4] pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Conner v. Tate,* 130 F.Supp.2d 1370, 1373 (N.D.Ga.2001). A motion to dismiss should only be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Linder v. Portocarrero,* 963 F.2d 332 (11th Cir.1992).

■ When resolving such a motion, the Court is typically constrained to look only to the pleadings and exhibits incorporated therein. FED.R.CIV.P. 10(c), 12(b). The Eleventh Circuit, however, has additionally permitted reference to a document attached to a motion to dismiss, but only where the attached document is "central to the plaintiff's claim" and is "undisputed" in the sense that "the authenticity of the document is not challenged." *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir.2002); *see also Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir.2005) (same).

### B. Pleading Under ERISA

■ Notwithstanding ERISA defendants' repeated protestations to the contrary, the prevailing view is that, as a general rule, a plaintiff need not meet some heightened pleading requirement when bringing an ERISA claim. *See, e.g., In re Dynegy, Inc. ERISA Litig.,* 309 F.Supp.2d 861, 867 (S.D.Tex.2004) (no heightened pleading requirement under ERISA); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* 284 F.Supp.2d 511, 652 (S.D.Tex.2003) (same); *Rankin v. Rotts,* 278 F.Supp.2d 853, 868 (E.D.Mich. 2003) ("Overall, [defendants'] motion to dismiss is really an attempt to obtain summary judgment and require [plaintiff] to state her claims with a level of particularity not called out in ERISA and not within her ability at this stage in the case.").[5] Rather, he need only meet the low plead-

---

**4.** In contrast to alleged "facts," a district court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Purvis v. City of Orlando,* 273 F.Supp.2d 1321, 1324 (M.D.Fla.2003). Likewise, the court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *see also Purvis,* 273 F.Supp.2d at 1324.

**5.** A more rigorous pleading requirement may be imposed when a plaintiff's ERISA claim amounts to an allegation of fraud. *See In re Syncor ERISA Litig.,* 351 F.Supp.2d 970, 978 (C.D.Cal.2004) (applying Rule 9(b) to ERISA

action involving charges of affirmative misstatements); *Herrington v. Household Int'l, Inc.,* No. 02 C 8257, 2004 WL 719355, *4, *6, 2004 U.S. Dist. LEXIS 5461, at *12–13, 19 (N.D.Ill. Mar. 31, 2004) (applying Rule 9's heightened pleading requirement *vis-a-vis* fraud allegations in ERISA claim); *cf. also Howell v. Motorola, Inc.,* 337 F.Supp.2d 1079, 1089 (N.D.Ill.2004) ("As Plaintiff alleges negligent misrepresentation, but not fraud or mistake, this court will not require that his claim satisfy the heightened pleading requirements of Rule 9(b)."); *Hill v. BellSouth Corp.,* 313 F.Supp.2d 1361, 1366 n. 4 (N.D.Ga.2004) (absent allegation of fraud, no heightened pleading requirement under ERISA).

ing threshold of Rule 8(a), which requires "a short and plain statement of the claim showing that [he] is entitled to relief." FED.R.CIV.P. 8(a). That is the standard against which Plaintiff's allegations will be measured in this case.

## II. A Brief Overview of ERISA and Relevant Remedial Provisions

■ Congress enacted ERISA in 1974 in order to "assur[e] the equitable character of [employee benefit plans] and their financial soundness." *Cent. States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). In furtherance of this objective, ERISA imposes upon those who manage the operation and administration of covered plans strict fiduciary duties—duties that the Eleventh Circuit has characterized as "the highest known to law." *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997) (*quoting Donovan v. Bierwirth*, 680 F.2d 263, 272 n. 8 (2d Cir.1982)). Among other things, ERISA fiduciaries are charged with "proper management, administration, and investment of plan assets, the maintenance of proper records, the disclosure of specified information and the avoidance of conflicts of interest." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251–52, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *see also* 29 U.S.C. § 1104(a) (enumerating duties of ERISA fiduciaries).

A fiduciary who deviates from the responsibilities imposed by the statute is, pursuant to ERISA § 409(a), subject to being held "personally liable to make good to [the] plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary...." 29 U.S.C. § 1109(a). Section 502(a)(2) authorizes participants of the plan, among others, to seek "appropriate relief" under that subsection through civil actions. 29

U.S.C. § 1132(a)(2). In addition, § 502(a)(3) creates a private right action for participants "to enjoin any act or practice which violates any provisions of this title or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this title or the terms of the plan. . . ." 29 U.S.C. § 1132(a)(3).

## III. Overarching Challenges to the Complaint

In their Motion to Dismiss, Defendants challenge the soundness of Plaintiff's claims in several particulars. Two of their arguments, however, have implications on the viability of his entire case. First, Defendants argue that the relief Plaintiff seeks is unavailable under ERISA. Second, they contend that Plaintiff's allegations regarding select Defendants' roles as ERISA fiduciaries are inadequate. The Court addresses these two overarching challenges at the outset, before delving into the more nuanced objections to Plaintiff's claims.

### A. Purported Absence of a Cognizable Claim for Relief

1. *Purported Absence of Request for Relief on Behalf of the "Plan"*

■ Defendants first and most forceful argument is that Plaintiff fails to state a claim for relief under ERISA § 502(a)(2). As related above, that subsection permits a plan participant to seek "appropriate relief" under § 409(a). 29 U.S.C. § 1132(a)(2). Section 409(a), in turn, provides that on an action for breach of fiduciary duty, a fiduciary may be held liable to "make good *to [the] plan* any losses *to the plan* resulting from each such breach. . . ." 29 U.S.C. § 1109(a) (emphases supplied). Courts have consistently read the italicized language as requiring

that a plaintiff pursuing § 502(a)(2) relief do so on behalf of the plan itself, and not on behalf of an individual recipient or recipients. *See, e.g., Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."); *Simmons v. S. Bell Tel. & Tel. Co.,* 940 F.2d 614, 617 (11th Cir.1991), *abrogated on other grounds, Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ("The plain language of § 1109(a) makes it clear that only the plan, and not an individual beneficiary, may recover damages for a breach of fiduciary duties."); *Bryars v. Coca–Cola Co.,* 1:01–CV–3124–TWT, 2004 U.S. Dist. LEXIS 14362, at *22 (N.D.Ga. Mar. 18, 2004) ("This section of ERISA was interpreted by the Supreme Court as providing 'relief singularly to the plan' and 'remedies that would protect the entire plan,' rather than the rights of an individual beneficiary. [Cit.] Accordingly, for relief to be available under section 409, the . . . Plan itself must have suffered a loss.").

In the instant litigation, Plaintiff seeks "[a]ctual damages in the amount of any losses the Plan suffered, to be apportioned among the Participants' individual accounts in proportion to the accounts' losses[.]" (*Id.* at Prayer for Relief § F.) Defendants insist that, notwithstanding this nominal focus on "the Plan," the requested relief is ultimately designed to compensate individuals, and because not every participant in the plan will benefit from the sought-after recovery, this action is not fairly within the ambit of § 502(a)(2).

The Court is mindful that ERISA is a comprehensive and detailed statute, and is accordingly sensitive to any argument that the relief sought by a litigant falls outside that contemplated by Congress. *See, e.g., Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) ("We have observed repeatedly that ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system. [Cits.] We have therefore been especially reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text.") (internal quotations omitted). Furthermore, the Court is aware that an argument similar to that presented by Defendants here has enjoyed some, albeit ephemeral success in other venues. *See, e.g., Milofsky v. Am. Airlines, Inc.,* 404 F.3d 338, 344 (5th Cir. 2005), *reh'g granted* 418 F.3d 429 (5th Cir.2005) (*en banc*) ("We cannot adopt an interpretation that would allow a plaintiff, merely by praying that relief pass through the plan into individual accounts, to eviscerate the standing requirement imposed by § 502(a)(2) by engaging in a legal fiction that the suit benefits the plan as a whole.") (split panel); *In re Schering–Plough Corp. Erisa Litig.,* 387 F.Supp.2d 392, 398–99 (D.N.J.2004), *rev'd* 420 F.3d 231 (3d Cir.2005) (holding that plaintiffs lacked standing because the complaint alleged only "harm suffered by the individual Plan Participants and not the Savings Plan, and seeks relief measured by the harm to individuals and tailored for the benefit of individuals, and not the Savings Plan").

■ That said, the Court joins the majority of courts that have addressed the issue, and rejects Defendants' assertion that a participant cannot be said to seek redress for "losses to the plan" unless *every* participant in the Plan was affected by the challenged breach of fiduciary duty,

and would therefore directly benefit from any potential recovery. *See, e.g., In re Schering–Plough Corp. Erisa Litig.*, 420 F.3d 231, 235 (3d Cir.2005) ("The fiduciary's liability [under § 502(a)(2)] is not limited to plan 'losses that will ultimately redound to the benefit of all participants.' The Plan held Schering–Plough stock as an asset and that asset was greatly reduced in value allegedly because of breaches of fiduciary duty. This clearly was a 'loss' to the Plan within the meaning of § 1109."); *Kuper v. Iovenko*, 66 F.3d 1447, 1453 (6th Cir.1995) (holding that subset of plan participants can sue for breach of fiduciary duty because, *inter alia*, "the ruling that plaintiffs seek would benefit the Plan as a whole and would foreclose any subsequent litigation because it would cure any harm that the Plan suffered"); *In re CMS Energy ERISA Litig.*, 312 F.Supp.2d 898, 912–13 (E.D.Mich.2004) (rejecting defendants' argument that plaintiffs could not bring suit under § 502(a)(2) because, although ostensibly bringing suit on behalf of the plan, recovery would benefit only a subset of individual participants' accounts); *In re Honeywell Int'l ERISA Litig.*, Civ. No. 03–1214(DRD), 2004 WL 3245931, *15, 2004 U.S. Dist. LEXIS 21585, at *51–52 (D.N.J. Sept. 14, 2004) (same).

ERISA § 409(a), by its terms, permits a suit against a plan fiduciary to recover "any losses to the plan resulting from [a] breach...." 29 U.S.C. § 1109(a). Although that language clearly indicates that Congress wanted to ensure that any claims for fiduciary breach would seek to enrich the plan, rather than an individual participant, *see, e.g., Bryars*, 2004 U.S. Dist. LEXIS 14362, at *22, it does not purport to limit suits to circumstances where the recovery would necessarily and without exception inure to the benefit of *all* plan participants. The Court perceives a real, qualitative difference between the language Congress selected, which requires that suit be brought on behalf of the "plan as a whole," *Mass. Mut. Life Ins. Co.*, 473 U.S. at 140, 105 S.Ct. 3085, and a requirement that, in a highly participant-focused manner, insists on a benefit to *every* employee participating in the plan. *See Milofsky*, 404 F.3d at 349 n. 4 (*Massachusetts Mutual Life Insurance Co.* "does not, however, stand for the proposition that the 'plan as a whole' is synonymous with 'all participants of the plan,' and several courts have rejected this definition of the 'plan as a whole[ ]' ") (King, C. J., concurring in part and dissenting in part).

Moreover, the Court finds any distinction between a loss to "the plan" and that to a large subset [6] of participants unsustainably artificial. The District Court for the District of New Jersey explained it well in *In re Honeywell International Erisa Litigation*, where it stated:

> Plaintiffs seek relief on behalf of the Plan, and therefore seek relief available under § 1132(a)(2). Defendants contend that because Plaintiffs seek to recover losses incurred by their accounts within the Plan, they actually seek relief only on their own behalf.... Defendants also argue that in order to prove the losses

---

6. The Court is not required to, and does not rule out the possibility that a subset of claimant-participants could be so small that the losses they seek to remedy cannot fairly be characterized as suffered "by the plan." *Milofsky*, 404 F.3d at 345 (in holding that plaintiffs could not pursue § 409 relief, emphasized that only "a small segment of the employees [were] bring[ing] a claim[,]" and

stated, "[w]e need not speculate on every possible situation in which a suit that demands relief beneficial to a large proportion of the beneficiaries can reasonably be said to 'protect the entire plan' "). Here, Plaintiff alleges that a great number of Plan participants' accounts suffered losses in connection with Defendants' alleged malfeasance. That, in the view of this Court, is sufficient.

for which they seek to be compensated Plaintiffs will have to [make individual showings of causation]; and they contend that this feature of the claims indicates that they are claims asserted on behalf of individual participants rather than on behalf of the Plan. These arguments, though not by any means unreasonable, are ultimately unpersuasive. The funds from which the losses at issue came were held by the Plan at the time those losses were incurred. Plaintiffs contributed funds to the general trust fund held by the Plan, and those funds were allocated to subfunds within the Plan's holdings in accordance with Plaintiffs' investment decisions.... The fact that the assets at issue were earmarked or held for individual Plaintiffs does not alter the fact that they were held by the Plan....

2004 WL 3245931, *15, 2004 Dist. LEXIS 21585, at *51–52. The Court finds such reasoning persuasive. Plaintiff's § 502(a)(2) claims will not be dismissed.

### 2. *Purported Absence of Request for Cognizable Equitable Remedy*

Conversely, the Court concludes that at least four aspects of the "equitable" relief Plaintiff seeks under § 502(a)(3) are unobtainable.

■ First, to the extent that Plaintiff seeks monetary damages under that subsection, the Complaint alleges no set of facts that would support such an award. The Supreme Court recently reiterated that "the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity[,]' " and that money damages "are the classic form of *legal* relief." *Great–West*, 534 U.S. at 210, 122 S.Ct. 708 (emphases in original). It emphasized that a monetary award under ERISA would fall within the scope of § 502(a)(3) only in the limited circumstance where the Plaintiff shows that he is entitled to be restored

*particular* funds or property improperly in the defendant's possession. *Id.* at 210–14, 122 S.Ct. 708; *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* 284 F.Supp.2d at 605–06, 612 (collecting cases where claims for monetary relief under § 502(a)(3) were rejected on this ground). The Court has found no factual allegations in the Complaint even suggesting that such is the case here. *See In re Honeywell Int'l ERISA Litig.,* 2004 WL 3245931, *17, 2004 Dist. LEXIS 21585, at *56 (dismissing claim upon similar allegations); *In re Schering–Plough Corp. Erisa Litig.,* 387 F.Supp.2d at 404–05, *rev'd on other grounds,* 420 F.3d 231 (3d Cir.2005) (same). Thus, Plaintiff's request for "equitable" monetary relief is dismissed.

■ For precisely the same reasons, Plaintiff's request for the imposition of a constructive trust is not viable. *See, e.g., In re Schering–Plough Corp. Erisa Litig.,* 387 F.Supp.2d at 404–05, *rev'd on other grounds,* 420 F.3d 231 (3d Cir.2005) (rejecting request for constructive trust on similar allegations). Absent an allegation that particular property of the plaintiff has inequitably found its way into the hands of the defendant—an allegation that is, again, absent in this case—such a trust is not an available remedy under § 502(a)(3). *Great–West,* 534 U.S. at 213, 122 S.Ct. 708.

■ Third, the Court finds improper Plaintiff's request for "[a]n Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations...." (Am. Compl. at Prayer for Relief, § E.) ERISA itself demands that Defendants comply with its prescriptions. "[C]ourts will not countenance injunctions that merely require someone to 'obey the law.' " *Hughey v. JMS Dev. Corp.,* 78 F.3d 1523, 1531 (11th Cir.1996).

■ Finally, Plaintiff seeks "[a] declaration that the Defendants, and each of them, are not entitled to the protections of ERISA § 404(c)(1)(B)[.]" (Am. Compl. at Prayer for Relief, § B.) [7] Defendants point out, correctly, that "[t]his request for declaratory relief is neither equitable nor remedial, but preemptively defensive." *In re Schering–Plough Corp. ERISA Litig.*, 387 F.Supp.2d at 403, *rev'd on other grounds*, 420 F.3d 231 (3d Cir.2005). Plaintiff's request for a declaration undermining the invocation of the § 404(c) defense will likewise be dismissed.

### B. Alleged Insufficiency of Averments Regarding Fiduciary Status

■ ERISA § 409 imposes personal liability only on "fiduciaries." Generally speaking, "[a] person or entity becomes an ERISA fiduciary either by being named as a fiduciary in written instruments that govern how an employee benefit plan is established or maintained [i.e., a 'named fiduciary'], or by exercising discretionary authority or control over the management, administration, or assets of a plan [i.e., a 'functional fiduciary']." *In re Dynegy, Inc. ERISA Litig.*, 309 F.Supp.2d at 872; *see also In re Polaroid Erisa Litig.*, 362 F.Supp.2d 461, 472 (S.D.N.Y.2005) ("An individual may be a fiduciary for ERISA purposes either because the plan documents explicitly describe fiduciary responsibilities or because that person functions as a fiduciary."); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F.Supp.2d at 543 ("under ERISA, a person or entity may be deemed a fiduciary either by assumption of the fiduciary obligations

(the functional of *de facto* method) or by express designation of the ERISA plan documents"). With respect to the latter, ERISA provides:

> a person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis supplied). Although this "to the extent" qualifier imposes a critical limitation on the scope of the fiduciary concept under ERISA, *see Local Union 2134, United Mine Workers of Am. v. Powhatan Fuel, Inc.*, 828 F.2d 710, 714 (11th Cir.1987) ("[o]ne assumes fiduciary status 'only when and to the extent' that they function in their capacity as ... plan fiduciary"), the "fiduciary" definition remains fact-intensive and broad, "construed liberally, consistent with ERISA's policies and objectives[.]" *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F.Supp.2d at 544 (quotations omitted); *cf. also Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 418 (5th Cir.1990) ("fiduciary status is to be determined by looking at the *actual* authority or power demonstrated, as well as the formal title and duties of

---

7. That section of ERISA states:

In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined

under regulations of the Secretary) ... no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.

29 U.S.C. § 1104(c)(1)(B).

the parties at issue") (emphasis in original).

· Defendants, throughout their papers, repeatedly assert that Plaintiff's allegations respecting their status as fiduciaries, ·and his assertions that certain acts were undertaken in their fiduciary capacities, are impermissibly vague. The Court addresses the more nuanced aspects of these arguments below. It takes the opportunity here, however, to decline the invitation to require the level of specificity and detail that Defendants insist must be present in order for Plaintiff to state a claim.

■ There may indeed be instances in which an ERISA plaintiff's allegations respecting a particular defendant's fiduciary status are so "conclusory" that a court need not afford them credence when determining whether the plaintiff has stated a claim for relief. Nevertheless, in light of the flexible and fact-intensive concept of a "functional fiduciary" under ERISA, the Federal Rules' adoption of liberal "notice pleading," and the infant stage of this litigation, the Court is reluctant to dispose of Plaintiff's ERISA claims based on the absence of exacting factual averments respecting the existence of Defendants' fiduciary status or the outer contours of their fiduciary capacities. *See In re Polaroid Erisa Litig.*, 362 F.Supp.2d at 470 ("an ERISA complaint need do little more than track the statutory definition to establish a defendant's fiduciary status in compliance with Rule 8") (internal quotations omitted); *In re AEP ERISA Litig.*, 327 F.Supp.2d 812, 827 (S.D.Ohio 2004) ("[T]his Court subscribes to the view that fiduciary status is a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss."); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F.Supp.2d 1165, 1180–81 (D.Minn.2004) (questions ·of fiduciary status and capacity are ill-suited to resolution on Rule 12(b)(6) motion); *In re*

*Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F.Supp.2d 658, 665 (E.D.Tex.2004) ("It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings."); *In re Sprint Corp. ERISA Litig.*, 388 F.Supp.2d 1207, 1227 (D.Kan.2004) (it is premature to determine scope of fiduciary duties and whether particular defendant acted in fiduciary capacity on motion to dismiss); *In re WorldCom, Inc.*, 263 F.Supp.2d 745, 759–60 (S.D.N.Y.2003) (holding sufficient allegations of fiduciary status that did "little more than track the statutory definition of a fiduciary[,]" and rejected defendant's argument that "boilerplate and conclusory allegations" of fiduciary status were insufficient to state a claim under Rule 8). While the Court addresses Defendants' more pointed objections below, it declines to dismiss any Defendant from the case based on a contention that Plaintiff's Complaint is impermissibly "vague" or "unclear" about such Defendant's fiduciary status. After reviewing the actual averments of the Complaint and the authorities cited *supra*, it finds that argument to lack merit. (*See* Am. Compl. ¶¶ 14–46, 76–93.)

## IV. Fiduciary Breach: Claim–Specific Challenges

### A. Count I: Management of Assets

In Count I of the Complaint, Plaintiff alleges that the ·ESP Committee, the PFIRC, SCS and Southern, among others, failed to. prudently and loyally manage Plan assets by maintaining the Plan's investment in Mirant stock when it was no longer prudent to do so, or to conduct an appropriate investigation into the merits of continued investment in the stock even in the face of obvious "red flags." (*Id.* ¶¶ 150–155, 180–185.) Defendants contend that this claim should be dismissed for four reasons. Although some of the principles Defendants invoke to support their position have merit, they do not justify the

wholesale dismissal of Plaintiff's claim at this point in the litigation.

### 1. *Characterization of Wrongs as Non–Fiduciary Acts*

■ First, Defendants argue that Plaintiff, through Count I of his Complaint, is improperly attempting to challenge Southern's decision to "spin-off" Mirant and the decision to make Mirant stock an investment option under the Plan. The Court finds this challenge to Count I of the Complaint unavailing.

Without question, Southern's election to "spin-off" Mirant was not a fiduciary act, and thus, cannot subject Southern to ERISA liability. *See Local Union 2134, United Mine Workers of Am.,* 828 F.2d at 714 ("[o]ne assumes fiduciary status 'only when and to the extent' that they function in their capacity as ... plan fiduciary"); *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir.1986) (discussing "two hat" doctrine as it applied to plaintiffs' challenge to sale of a business; held: "ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets"). Likewise, any decision to include the Mirant Stock Fund in the Plan portfolio, or whether to amend the Plan in connection with the Mirant investment cannot properly be challenged as a breach of fiduciary duty. *See Lockheed Corp. v. Spink,* 517 U.S. 882, 891, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) ("Lockheed acted not as a fiduciary but as a settlor when it amended the terms of the Plan to include the retirement programs."); *In re Syncor ERISA Litig.,* 351 F.Supp.2d at 980 ("To the extent Plaintiffs allege the defendants breached their fiduciary duties by not amending the plans, Plaintiffs' claims cannot stand because Defendants are not acting as fiduciaries in that context."); *In re CMS Energy ERISA Litig.,* 312 F.Supp.2d at 907 (plaintiff cannot challenge as a fiduciary breach the

failure to amend an ERISA plan); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 312 F.Supp.2d at 1181 ("It is well settled that plan design, as opposed to plan administration, is not a fiduciary function.... [T]he company was free to design the plan in any manner consistent with ERISA."). These limitations, to be sure, significantly reign in the theories Plaintiff may employ to prove a deviation from ERISA's duty of prudence in this case.

That said, the fact remains that these non-fiduciary decisions are not the only aspects of Defendants' conduct that Plaintiff challenges in Count I of his Complaint. Rather, the thrust of his claim appears to be that Defendants failed to properly manage the Plan's investment in Mirant stock *after* it became a part of the Plan's portfolio. The facts alleged in the Complaint more than sufficiently articulate facts suggesting that continuing to maintain the investment in Mirant was imprudent. Although Defendants may ultimately prove that their decision to nevertheless hold onto the stock was in complete accord with, or indeed, compelled by the terms of the Plan, that does not necessarily shield them from liability. "While normally fiduciaries are to follow the requirements set forth in governing plan documents, fiduciaries must exercise their judgment and refuse to do so if their analysis leads them to believe that the plan-directed investment would be imprudent and inconsistent with ERISA." *Hill,* 313 F.Supp.2d at 1367; *see also* 29 U.S.C. § 1104(a)(1)(D) (fiduciary must act prudently and "in accordance with the documents and instruments governing the plan *insofar* as such documents and instruments *are consistent with ERISA*") (emphasis supplied); *Herman,* 126 F.3d at 1361 ("If NationsBank determined, or should have determined, that [following the Plan] provision w[as] imprudent, then NationsBank was required to ignore that provision and [act] notwith-

standing it."); *In re Polaroid Erisa Litig.,* 362 F.Supp.2d at 474 ("Thus, the fact that the Plan required investments in Polaroid stock does not ipso facto relieve Defendants of their fiduciary obligations.... By force of statute, Defendants had the fiduciary responsibility to disregard the Plan and eliminate Plan investments in Polaroid stock if the circumstances warranted.") (internal quotations omitted).

### 2. *The Section 404(c) Defense*

 Defendants next urge that "Count I should be dismissed because individual plan participants controlled their own investment decisions." (*See* Mem. of Law in Supp. of the S. Co. Defs.' Mot. to Dismiss [27] at 27.) They explain that the Plan was designed to satisfy the requirements of § 404(c), and that, accordingly, no person who would otherwise be a fiduciary can be liable for any loss that resulted from an individual participant's exercise of control over her own account. *See* ERISA § 404(c), 29 U.S.C. § 1104(c) ("In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary) ... no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.").[8]

The Court declines to accept this argument. Reliance on § 404(c), which is in the nature of an affirmative defense, is necessarily misplaced at this stage of the litigation. *See In re AEP ERISA Litig.,* 327 F.Supp.2d at 829–30 ("[C]ourts routinely refuse to dismiss an ERISA action because the defendant argues § 404(c) applies.... [Section] 404(c) is in the nature of an affirmative defense, which generally is not an appropriate consideration on a motion to dismiss."); *In re Reliant Energy ERISA Litig.,* 336 F.Supp.2d 646, 669 (S.D.Tex.2004) ("The § 404(c) provision is a safe harbor provision on which defendant bears the burden of pleading and proof. [Cit.] Section 404(c) does not provide a basis for dismissal of the Complaint at this time."); *In re Sprint Corp. ERISA Litig.,* 388 F.Supp.2d at 1234–35 ("[T]he Sprint defendants contend that liability against them is precluded by ERISA § 404(c).... Defendants will need to prove they are entitled to invoke this defense on the facts of the case. Resolution of this issue on a motion to dismiss is premature."); *Rankin,* 278 F.Supp.2d at 873 ("There simply are factual issues implicit in section 404(c), including whether or not a participant actually exercised independent control with respect to a transaction. Dismissal is not appropriate."); *In re WorldCom, Inc.,* 263 F.Supp.2d at 764 n. 12 (rejecting argument that assertion of § 404(c) defense is proper on motion to dismiss). The Court will not dismiss Count I of the Complaint on this ground.

---

8. In making this argument, Defendants also emphasize that the Mirant Stock Fund, as a matter of Plan design, did not permit participants to make "new" investments in Mirant following the initial spin-off. Again, this aspect of Plan design may remove an important and otherwise sustainable theory in Plaintiff's litigation arsenal *vis-a-vis* the duty of prudence. The Court is not prepared, however, at this stage of the litigation, to dismiss Plaintiff's claim in light of this Plan feature. *Cf. Herrington,* 2004 WL 719355, *5, 2004 U.S. Dist. LEXIS 5461, at *16 ("[I]t is not conclusive from the facts before us whether or not the Committee Defendants had viable alternatives that they could have taken. At this stage of the proceedings it is not the burden of Plaintiffs to address all of the potential counter-arguments by Defendants in the complaint. We find that Defendants' arguments on this issue are premature and deny the motion to dismiss Count I to the extent that it contains a claim of imprudent management of the Plan assets.").

### 3. *Alleged Insufficiency of Allegations Respecting Conflict–of–Interest*

■ Next, Defendants argue that Count I of the Complaint, insofar as it relies on a purported breach of the duty of loyalty, fails to state a claim. ERISA requires that plan fiduciaries discharge their duties "solely in the interests of the participants and beneficiaries[,]" and "for the exclusive purpose" of providing benefits to them. 29 U.S.C. § 1104(a)(1). Defendants contend that Plaintiff has failed to articulate a claim for breach of this duty, citing three perceived deficiencies in Plaintiff's allegations. First, they urge, generally, that the allegations supporting the claim are too "conclusory." Second, they state that such allegations "make no sense" in this case, because Southern "spun-off" all its interest in Mirant concomitant with the Plan's acquisition of Mirant shares, while SCS never held Mirant stock. Third, Defendants insist that this case is uniquely ill-suited to a conflict-of-interest theory because Mirant was a "separate company" from Southern and SCS, and participants in the Southern Plan were precluded from acquiring new shares of Mirant during the relevant time period. The Court finds none of these arguments availing at this stage of the case.

Initially, with respect to the argument that Plaintiff's allegations are too "conclusory," the Court finds that Plaintiff has satisfied the low pleading threshold of Rule 8 by averring that Defendants held interests in Mirant during the relevant time period, and engaged in imprudent acts and omissions with respect the Plan to protect the value of their own investment or to shield themselves from liability *vis-a-vis* Mirant's illict activities while it was a Southern subsidiary. *See* Am. Compl. ¶¶ 142–55, 162–66; *see also In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F.Supp.2d at 673 (upholding breach of loyalty claim in view of similar allegations); *In re Honeywell Int'l ERISA Litig.*, 2004 WL 3245931, **12–13, 2004 U.S. Dist. LEXIS 21585, at *44–46 (same); *Herrington*, 2004 WL 719355, **6–7, 2004 U.S. Dist. LEXIS 5461, at *17–18 (same). This is simply not a case where the *allegation* of an identifiable conflict is absent, or where the plaintiff has failed to allege any malfeasance on the part of the alleged fiduciary motivated by such a divided loyalty. *Compare In re Dynegy, Inc. ERISA Litig.*, 309 F.Supp.2d at 896–98 (conflict-of-interest claim failed where plaintiff neglected to identify source of any conflict); *In re WorldCom, Inc.*, 263 F.Supp.2d at 768 (no breach of duty of loyalty alleged where plaintiff, despite identifying source of conflict, failed to allege that defendant took any action based on personal interest while wearing his "fiduciary hat"). In the view of this Court, with both the source of the conflict and improper fiduciary acts inspired by that conflict alleged, the Complaint states a claim for breach of the duty of loyalty.

Defendants argue, however, that the claim still must fail against Southern and SCS because neither of those entities held Mirant stock during the relevant time period. That argument fails for two reasons. First, it essentially challenges the accuracy of Plaintiff's factual allegations, which must be presumed true at this stage of the proceeding. *Cooper v. Pate*, 378 U.S. at 546, 84 S.Ct. 1733.[9] And second, Plaintiff

---

**9.** Defendants appear to argue that Exhibit F to the Amended Complaint undermines Plaintiff's theory. That Exhibit, to Defendants' credit, does contain the statement that, "After the spin-off, Southern Company will not own any shares of Mirant common stock, and Mirant will be a fully independent, publicly traded company." (Am. Compl. at Ex. F, pp. 1 & 7.) Viewed most favorably to Plaintiff, however, that representation cannot be read as im-

describes the source of the conflict as not simply an incentive to keep the price of Mirant stock high for Defendants' own pecuniary gain, but also their desire to avoid prosecution and/or civil liability as a consequence of Mirant's malfeasance while it remained a part of the Southern/SCS "family." (Am.Compl.¶¶ 164–65.) The fact that neither Southern nor SCS actually owned shares of Mirant following the "spin-off" does little to impact this latter source of alleged conflict.

In addition, Defendants try to distinguish this case from that in which conflict-of-interest claims withstood dismissal by emphasizing two uncharacteristic attributes of the alleged conflict. First, they point out that most of the authorities upholding a "conflict-of-interest" theory dealt with allegations of impropriety surrounding a plan's investment in a defendant-company's *own* stock (*i.e.*, "company stock"). Although that distinction may prove problematic for Plaintiff when it comes to issues of proof (*e.g.*, of Defendants' financial incentives, knowledge respecting the imprudence of the investment), the Court finds that it is entitled to little weight at this stage of the litigation, especially in view of Plaintiff's allegations concerning the interrelationship of Mirant and Defendants both preceding and immediately after the Mirant "spin-off." Simply stated, Mirant's status as a "separate company" neither erases the obligation of the (alleged) Defendant-fiduciaries to act "solely in the interests of the participants and beneficiaries[,]" 29 U.S.C. § 1104(a)(1), nor belies the allegations of competing interests and resulting malfeasance found in the Complaint.

Likewise, Defendants' attempt to distinguish this case by arguing that the Mirant Stock Fund was a "closed fund"—preclud-

ing investment in Mirant by plan participants following the spin-off—is ineffective. To be sure, Defendants could not advance their own interests here by encouraging participants to acquire *additional* shares of mutually held securities. *Compare In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F.Supp.2d at 561–63 (describing how fiduciaries encouraged participants to acquire more Enron stock while selling off their own shares). But nothing in the Plan prevented Defendants from protecting their alleged investment in Mirant, through the acts and omissions alleged in the Complaint, by ensuring that the market was not "flooded" by the Plan's mass-divestiture of Mirant stock. Again, this feature of the Plan merely restricts the theories upon which Plaintiff may rely in his prosecution of this case—it does not foreclose the legal viability of his claim on a 12(b)(6) motion.

### 4. *Southern, SCS, and the ESP Committee*

█ Finally, Defendants argue that Count I of the Complaint fails *vis-a-vis* Southern, SCS, and the ESP Committee. They argue Southern and SCS were not fiduciaries within the meaning of ERISA, while the ESP Committee was not a fiduciary with respect to the selection of investment fund options for the Plan.

As discussed *supra*, the Court is strongly disinclined, at this stage of the litigation, to dismiss parties based on an argument that they either were not fiduciaries or were acting outside of their fiduciary capacities with respect to certain acts or omissions. (*See supra* Part III.B.) Although Plaintiff's allegations of fiduciary status *vis-a-vis* Southern and SCS are indeed austere, the Court is of the view that

---

plying that Southern would never again purchase or hold shares of Mirant (including during the times relevant to this action), only

that it contemplated selling its *current* shares of Mirant as of the spin-off date. It does not conclusively defeat Plaintiff's conflict theory.

these minimal allegations of discretionary control over the Plan's assets (and ambiguity respecting whether SCS is a named fiduciary under the Trust Agreement) are sufficient to survive a Rule 12(b)(6) motion. *See* Am. Compl. ¶¶ 15, 18, 76–81; *see also* *See In re Polaroid Erisa Litig.*, 362 F.Supp.2d at 470 ("an ERISA complaint need do little more than track the statutory definition to establish a defendant's fiduciary status in compliance with Rule 8") (internal quotations omitted); *In re World-Com, Inc.*, 263 F.Supp.2d at 759–60 (holding sufficient allegations of fiduciary status that did "little more than track the statutory definition of a fiduciary[,]" and rejected defendant's argument that "boilerplate and conclusory allegations" of fiduciary status were insufficient to state a claim under Rule 8).[10] His claims against Southern and SCS will not be dismissed on the ground that these entities were not fiduciaries within the meaning of ERISA.

Likewise, the Court declines to hold that the ESP Committee is not a proper defendant as it relates to Count I of the Complaint. Defendants concede that the ESP Committee, as the Plan administrator, is a fiduciary, and is vested with the sweeping authority "to take all actions and to make all decisions necessary or proper to carry out the Plan and to control and manage the operation and administration of the Plan. . . ." (*See* Am. Compl. Ex. C at § 13.4.) Nevertheless, they point out that it was the PFIRC that "possessed and exercised responsibility for prudently selecting investment fund options for the Plan[,]" (*id.* ¶ 32), and insist that, accordingly, only the PFIRC can be liable for an alleged breach of the duty to prudently manage the Plan's investments.

The fact that the PFIRC was *specifically* tasked with managing the Plan's assets does not, in the view of this Court, answer the question whether the ESP Committee may also be liable for failing to prudently manage Plan holdings. *Cf. In re Polaroid Erisa Litig.*, 362 F.Supp.2d at 473 (holding that defendant who was alleged to be a functional fiduciary could still be liable for breaching the duty of prudence notwithstanding the fact that the Plan ex-

---

**10.** Plaintiff also argues that Southern and SCS are liable in this action under the doctrine of *respondeat superior*. The Court has some reservation about imposing *respondeat superior* liability under ERISA, given the absence of any express contemplation of such a theory within the text or legislative history of the statute. *See Great–West Life & Annuity Ins. Co.*, 534 U.S. at 209, 122 S.Ct. 708 ("We have observed repeatedly that ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system. [Cits.] We have therefore been especially reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text.") (internal quotations omitted); *see also In re AOL Time Warner Sec. & ERISA Litig.*, 02 Civ. 8853(SWK), 2005 WL 563166, *$, n. 5, 2005 U.S. Dist. LEXIS 3715, at *12 n. 5 (S.D.N.Y. Mar. 9, 2005) (rejecting *respondeat superior* liability under ERISA; *but see Kling v. Fid. Mgmt. Trust Co.*, 323 F.Supp.2d 132,

145–47 (D.Mass.2004) (adopting *respondeat superior* liability under ERISA); *Stanton v. Shearson Lehman/Am. Express, Inc.*, 631 F.Supp. 100, 104 (N.D.Ga.1986) (same). Moreover, given that most courts that have acknowledged the potential viability of a *respondeat superior* theory have insisted on a showing of *de facto* control over the acts of the malfeasant fiduciary before imposing such liability, *see, e.g., In re Dynegy, Inc. ERISA Litig.*, 309 F.Supp.2d at 901–02, the Court finds it difficult to envision a scenario in which a principal could be liable under a *respondeat superior* theory without itself meeting the definition of a functional fiduciary. *Landry*, 901 F.2d at 418 ("fiduciary status is to be determined by looking at the *actual* authority or power demonstrated, as well as the formal title and duties of the parties at issue") (emphasis in original). In light of the conclusion reached above, however, the Court need not resolve the applicability of the doctrine at this juncture.

pressly provided him only with powers of appointment and removal); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F.Supp.2d at 1180–81 (questions of fiduciary status and capacity are ill-suited to resolution on Rule 12(b)(6) motion); *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F.Supp.2d at 672–73 ("Defendants argue that they have no duty to communicate with Plan beneficiaries because the Plan allocated the duty to communicate to BAC. Against Defendants' argument, the Court considers Plaintiffs' allegations that ... Defendants are de facto fiduciaries who were all responsible for the selection and monitoring of the Plan's investment options.... Considering Plaintiffs' allegations as true, the Court cannot hold that Plaintiffs can prove no set of facts consistent with the allegations that would establish a duty to communicate with Plan beneficiaries.") (internal footnotes and quotations omitted). Given the exceptionally broad authority conferred on the ESP Committee by the Plan documents and Plaintiff's allegations of de facto control, it would be improper to dismiss it from Count I of the Complaint for failure to state a claim.

In sum, Count I of Plaintiff's Complaint states a claim upon which relief may be granted. Although the authorities and principles cited by Defendants may constrain Plaintiff's ability to *prove* his case, they do not justify dismissing it.

### B. Count II: Failure to Monitor

In Count II, Plaintiff alleges that Southern, SCS, the Director Defendants, and the PFIRC breached their monitoring duties under ERISA by failing to adequately supervise their appointees and ensure that they prudently managed the Plan's investment in Mirant stock, and also by failing to provide their appointees with critical information regarding Mirant's financial condition. *See, e.g., In re Xcel Energy, Inc., Sec., Derivative & "ERISA"*

*Litig.*, 312 F.Supp.2d at 1176 ("A person with discretionary authority to appoint, maintain and remove plan fiduciaries is himself deemed a fiduciary with respect to the exercise of that authority. [Cit.] Implicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the duty to monitor appointees."); *In re Sprint Corp. ERISA Litig.*, 388 F.Supp.2d at 1231–32 ("[C]ourts have widely held that an appointing fiduciary has an ongoing duty to monitor its fiduciary appointees."). Defendants challenge both the sufficiency of the allegations supporting this Count and the contours of the legal theory upon which the claim is predicated. For the reasons that follow, the Court finds Defendants' arguments do not warrant dismissal.

### 1. *Purported Absence of an Underlying Breach*

Defendants' first argument is that "[a] breach of fiduciary claim for failure to monitor the fiduciaries that such defendant appointed is premised on a finding that the appointed fiduciary breached his duties." (Mem. of Law in Supp. of the S. Co. Defs.' Mot. to Dismiss [27] at 35.) Because there has been no "primary" breach, Defendants argue, Count II necessarily fails.

The Court finds the underlying assumption supporting Defendants' argument to be flawed. Counts I and III of the Complaint state claims for relief. Defendants' first objection to Count II, therefore, is unavailing.

### 2. *Liability of the PFIRC, Southern, and SCS*

█ Defendants next take issue with Count II of the Complaint insofar as it attempts to assert a claim against the PFIRC, Southern, and SCS. They point out, correctly, that a party's duty to monitor can extend only to those fiduciaries

that the party appointed, and insist that none of the foregoing Defendants appointed the persons whom Plaintiff alleges acted improperly. The Court addresses each Defendant in turn.

First, as it relates to the PFIRC, Plaintiff admits that he is unaware, at this point, whether the PFIRC actually exercised its power of appointment with respect to the Mirant Stock Fund. He has therefore chosen to voluntarily dismiss his duty to monitor claim against the PFIRC without prejudice, making further evaluation of Defendants' argument *vis-a-vis* the PFIRC unnecessary.

With respect to Southern, Plaintiff alleges that the company "appointed the persons who served in [certain] high-level corporate positions ... on the [sic] either the ESP Committee or PFIRC...." (Am. Compl. ¶ 76.) Defendants contend that this allegation is contradicted by the "First Amendment" to the Plan. That Amendment provides that the SCS Board of Directors, not Southern, amended the Plan to identify the positions within Southern whose occupants would serve on the Committee. (*See* Reply Br. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl. [55] at Ex. 3.) [11]

The Court finds this to present a close and somewhat novel question. It has found nothing in the case law discussing the apparent division of "appointment power" seemingly contemplated by the Plan here—with the SCS Board selecting the positions at Southern that the ESP Committee comprises, and Southern apparently retaining the power to decide which indi-

viduals are placed into those positions (*e.g.*, Vice–President, Human Resources of the Southern Company). Defendants insist that Southern's decision to appoint certain individuals to those positions was undertaken in its capacity as an "employer," not a Plan fiduciary, citing *Sutton v. BellSouth Telecomm., Inc.*, 189 F.3d 1318, 1321 (11th Cir.1999) (recognizing "the general proposition that corporate managerial decisions are not governed by ERISA because they do not involve discretionary acts regarding plan administration"). *Sutton*, however, dealt with an employee attempting to challenge his termination from employment under ERISA, and does little to inform the Court's analysis here. Indeed, saying that the "managerial decisions" at issue here were undertaken solely in Southern's capacity as employer, and did "not involve discretionary acts regarding plan administration[,]" seems to ignore the fact that an important element of any personnel decision *vis-a-vis* these positions was the ability of the selected individual to serve as an ERISA fiduciary on the ESP Committee. In the view of this Court, although the SCS Board indeed played a role in determining which corporate positions the ESP Committee comprised, Southern's (apparent) ultimate ability to select *which* persons would fill the designated, fiduciary positions imposed upon it the duty to monitor such persons. *See, e.g., In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F.Supp.2d at 1176 ("A person with discretionary authority to appoint, maintain and remove plan fiduciaries is himself deemed a fiduciary with respect to the exercise of that authority. [Cit.] Im-

---

11. The Amendment was incorporated in the Motion to Dismiss (and eventually attached to the Reply), but was not appended to the Complaint itself. Plaintiff, however, does not dispute the authenticity of the document, and, being part of the Plan, the Court concludes that the Amendment can fairly be characterized as "central" to Plaintiff's claim. *See*

*Day*, 400 F.3d at 1276 (stating that exhibit to motion to dismiss may be considered during Rule 12(b)(6) analysis if "central" to Plaintiff's claim and if the exhibit's authenticity is not disputed; construing "central" requirement broadly). In any event, the Amendment's contents do not affect the Court's resolution of the instant motion.

plicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the duty to monitor appointees."). The Court will not dismiss Southern from Count II of the Complaint on this ground.

With respect to SCS, Defendants argue that "[t]he Complaint does not allege that SCS made any fiduciary appointments, only that the SCS Board of Directors did." (*See* Mem. of Law in Supp. of the S. Co. Defs.' Mot. to Dismiss [27] at 37.) The Court finds this attempt to exempt a corporation from liability for the acts of its Board ineffective. While the Court, as mentioned *supra*, is reluctant to impose ERISA liability under a theory of *respondeat superior*, it has been unable to find any support for the proposition that a meaningful distinction can be drawn between a "corporation" and the directors through whom it must act. *Cf.* DEL.CODE ANN. tit. 8, § 141(a) (2001) ("The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors...."); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F.Supp.2d at 660 ("as a matter of established law, a corporation acts through its board of directors to effectuate its corporate duties"). Accordingly, the Court will not dismiss SCS from Count II on the basis of this argument.

### 3. The Existence of a Duty to Inform Attendant to the Duty to Monitor

More fundamentally, Defendants argue that Plaintiff's theory is flawed in that it seeks to construe the duty to monitor appointed fiduciaries to encompass a duty to apprise such appointees of pertinent infor-

mation. They argue that such a duty does not exist, and that, even if it did, the Complaint fails to allege that Defendants had knowledge of material, non-public information that they were purportedly required to share with the appointed fiduciaries.[12] The Court disagrees.

First, the duty to keep appointees informed has gained reasonably wide acceptance as an inherent facet of the more general "duty to monitor." *See In re Polaroid Erisa Litig.*, 362 F.Supp.2d at 477 ("Plaintiffs' allegation that DiCamillo failed to adequately monitor or keep the Plan Administrators and Fund Managers informed states a claim for breach of fiduciary duty."); *In re Syncor ERISA Litig.*, 351 F.Supp.2d at 986 ("Courts have repeatedly acknowledged that a board of directors may have a duty to monitor investments, and that the duty sometimes includes a duty to disclose information to committee members."); *In re Sears, Roebuck & Co. ERISA Litig.*, 2004 WL 407007, *8, 2004 U.S. Dist. LEXIS 3241, at *23 (N.D.Ill. Mar. 2, 2004) (rejecting argument that duty to monitor does not include duty to keep appointees informed of material non-public information); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F.Supp.2d at 657 ("A claim has also been stated in Count I against Enron and the Compensation Committee for breach of their fiduciary duty of providing information necessary for Plan Administration because they allegedly withheld from the Administrative Committee ... material information regarding the actual financial condition of Enron."); *In re WorldCom, Inc.*, 263 F.Supp.2d at 765 (discussing plaintiffs' failure to monitor claim; held: "When a corporate insider

---

**12.** Defendants also point out that the Plan required the PFIRC to report annually to the SCS Board, and insist that this shows the Board members did not breach their duty to monitor. Plainly, such a requirement is not alone sufficient to show that the Defendants actually fulfilled their duty to monitor, or even complied with the express mandate of the Plan to accept such reports.

puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity. Plaintiffs' allegation that Ebbers failed to disclose to the Investment Fiduciary and the other investing fiduciaries material information he had regarding the prudence of investing in WorldCom stock is sufficient to state a claim."); *see also Hill,* 313 F.Supp.2d at 1370 (appearing to recognize that duty to monitor includes obligation to keep appointees informed).

Indeed, even those courts that have seemed less inclined to unequivocally endorse the duty to inform have found it inappropriate to dismiss such a claim on a Rule 12(b)(6) motion. *See In re Elec. Data Sys. Corp. "ERISA" Litig.,* 305 F.Supp.2d at 671 ("At this stage of the proceedings, the Court will not endeavor to define the duty to monitor's outer edges with no factual record to indicate how far this case may or may not push those edges. The Court simply holds that some duty to monitor does exist and that Plaintiffs have sufficiently pled a possible cause of action sufficient to allow them access to discovery."); *In re Sprint Corp. ERISA Litig.,* 388 F.Supp.2d at 1232–33 (although observing that "[w]hether the director defendants had a . . . duty to disclose information to the [appointed] committees presents a more novel issue[,]" held that question "would more appropriately be resolved on the facts of the case"); *see also Syncor ERISA Litig.,* 351 F.Supp.2d at 986 ("The scope of the duty to monitor will require a factually intense analysis.

[Cits.] The Court declines to determine the scope of the duty at this stage of the litigation.").

■ This Court, similarly reluctant to articulate the outer boundaries of the duty to monitor at this stage of the litigation, likewise declines to hold *as a matter of law* that the duty encompasses no obligation to keep appointees reasonably informed of non-public, material information within the appointing fiduciary's knowledge.[18]

Moreover, contrary to Defendants' argument, the Court finds that Plaintiff has satisfied his burden of alleging that Defendants possessed such information, but nevertheless failed to relate it to their appointed fiduciaries. (*See* Am. Compl. ¶¶ 110, 123–25, 147–49.) Defendants' position that such knowledge is highly improbable given that, following the "spin off," Mirant was a separate legal entity is an argument better suited for summary judgment or trial than to this point in the proceedings. *Cooper,* 378 U.S. at 546, 84 S.Ct. 1733 (allegations of complaint must be taken as true for purposes of motion to dismiss).

### 4. *"Conclusory" Allegations*

Lastly, Defendants argue that the allegations supporting Count II, at least insofar as those allegations assert that they breached their duties by failing to remove certain appointees, are impermissibly vague. They emphasize that "Plaintiff completely fails to allege *who* purportedly should have been removed from an appointed position, *when* such person or per-

---

**13.** Defendants reliance on the District Court for the Southern District of Texas' decision in *In re Reliant Energy ERISA Litigation,* 336 F.Supp.2d 646 (S.D.Tex.2004), moreover, does not persuade the Court that it should depart from the prevailing view in this case. *Reliant Energy,* although indeed rejecting the existence of an obligation to inform incident to the duty to monitor, did so, exclusively, on

what this Court respectfully perceives to be a flawed reading of *In re WorldCom, Inc.,* 263 F.Supp.2d 745 (S.D.N.Y.2003). *Compare In re Reliant Energy ERISA Litig.,* 336 F.Supp.2d at 659, *with In re WorldCom, Inc.,* 263 F.Supp.2d at 765; *see also In re Syncor ERISA Litig.,* 351 F.Supp.2d at 986 (declining to follow *Reliant Energy* ).

sons should have been removed, and the reason *why*." (*See* Mem. of Law in Supp. of the S. Co. Defs.' Mot. to Dismiss [27] at 42) (emphasis in original). The Court, at least as it relates to the assertion that a plaintiff must allege precisely who and when a fiduciary should have been removed, believes that Defendants overstate the detail demanded by Rule 12(b)(6). In any event, read in its entirety, the Complaint here *does* identify who Plaintiff contends should have been removed, (*see* Am. Compl. ¶¶ 26–46), and the reasons why Defendants' failure to remove such persons was improper. (*See* Am. Compl. ¶¶ 167–69, *see also* Am. Compl. ¶¶ 142–66.) Defendants' assertions to the contrary take an unduly restrictive view of Plaintiff's failure to monitor claim.

In conclusion, Count II of Plaintiff's Complaint states a claim upon which relief may be granted. Again, while the authorities and principles cited by Defendants may constrain Plaintiff's ability to *prove* his case, they do not justify dismissal.

## C. Count III: Failure to Speak Truthfully, to Correct Misstatements, and to Provide Material Information to Plan Participants

In Count III, Plaintiff alleges that Southern, SCS, the ESP Committee, and the PFIRC failed to provide Plan participants with complete and accurate information regarding the true risks of investing in Mirant stock as a result of Mirant's illegal practices, as well as regarding Mirant's true financial condition, and, instead, provided inaccurate information, which Defendants knew or should have known would have an extreme impact on the Plan and participants' retirement assets. (*Id.* ¶¶ 156–161, 205–209.) Defendants counter that no they had no duty to inform participants of such information, and in any event, state that such a claim is viable, if at all, only against the ESP Committee. The

Court finds these arguments do not warrant dismissal of Count III.

### 1. *Fiduciary Capacity Arguments*

Two of Defendants' challenges to Count III are predicated on the concept of fiduciary capacity. First, Defendants contend that only the ESP Committee was charged by the Plan with communicating with participants, and thus, that only it can be held liable for misleading statements or omissions pertaining to the Mirant investment. (*See* Am. Compl. ¶ 156.) While similar contentions have found some support in other venues, *see, e.g., Crowley v. Corning, Inc.*, 234 F.Supp.2d 222, 229 (W.D.N.Y. 2002), it is the view of this Court that such an argument fails to appreciate the implications of Plaintiff's allegation that all the Defendants named in Count III were functional fiduciaries, and that, at least *vis-a-vis* Southern and SCS, they actively assumed the duty to communicate with Plan participants. *See* Am Compl. ¶¶ 156, 159–61; *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F.Supp.2d at 672–73 ("Defendants argue that they have no duty to communicate with Plan beneficiaries because the Plan allocated the duty to communicate to BAC. Against Defendants' argument, the Court considers Plaintiffs' allegations that ... Defendants are de facto fiduciaries who were all responsible for the selection and monitoring of the Plan's investment options.... Considering Plaintiffs' allegations as true, the Court cannot hold that Plaintiffs can prove no set of facts consistent with the allegations that would establish a duty to communicate with Plan beneficiaries.") (internal footnotes and quotations omitted); *see also In re Polaroid Erisa Litig.*, 362 F.Supp.2d at 473 (holding that defendant who was alleged to be a functional fiduciary could still be liable for breaching the duty of prudence notwithstanding the fact that the Plan expressly provided him only

with powers of appointment and removal).[14] The Court cannot say that "beyond doubt[,] . . . the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

Second, Defendants argue that any communications made by Southern or SCS were undertaken in those entities' corporate, rather than fiduciary, capacities. To be sure, any communications by those companies made in a non-fiduciary capacity are not actionable under ERISA. *See, e.g., In re Syncor ERISA Litig.,* 351 F.Supp.2d at 987 ("A defendant may be charged with an ERISA breach only when performing a fiduciary function. [Cits.] In this case, the statements pled by Plaintiffs do not support that Defendants made them with the intent to communicate about the security of the benefits plan."). Nevertheless, while Plaintiff's Complaint may be amenable to the reading advocated by Defendants, it can also fairly be read as alleging that Southern and SCS assumed a fiduciary role in directing certain communications ("directly") to Plan participants. (*See* Am. Compl. ¶ 159.) It would be premature to dismiss such claims at this juncture. *See, e.g., In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 312 F.Supp.2d at 1180–81 (questions of fiduciary status and capacity are ill-suited to resolution on Rule 12(b)(6) motion); *In re Sprint Corp. ERISA Litig.,* 388 F.Supp.2d at 1227 (it is premature to determine scope of fiduciary duties and whether particular defendant acted in fiduciary capacity on motion to dismiss).

### 2. *Duty to Correct Misstatements, Inform Participants*

▋ Defendants next urge that Plaintiff has failed to properly allege that they were derelict in their duty to correct affirmative misstatements contained in fiduciary communications. This Court has previously acknowledged that such a duty exists under ERISA. *See Hill,* 313 F.Supp.2d at 1367 ("[A]n affirmative duty to disclose has also been imposed where a fiduciary presents materially misleading information to plan beneficiaries while acting as a fiduciary, requiring the fiduciary to correct the error and speak truthfully to the beneficiaries."); *see also In re Honeywell Int'l ERISA Litig.,* 2004 WL 3245931, **9–10, 2004 Dist. LEXIS 21585, at *29–33 (holding that, to the extent SEC and other public filings were incorporated by reference in fiduciary communications, communicating fiduciary has duty to correct misstatements within such filings); *In re Sprint Corp. ERISA Litig.,* 388 F.Supp.2d at 1225–27 (same); *In re Dynegy, Inc. ERISA Litig.,* 309 F.Supp.2d at 872 (same).

Defendants nevertheless contend that no such claim has been asserted here because, to the extent any fiduciary communications incorporated public Southern filings, they concerned only *Southern* stock, and to the extent the communications incorporated Mirant filings, the Defendants here had neither control over the contents of such filings nor knowledge of the filings' falsity. Defendants have not, however, pointed to any evidence that conclusively establishes these propositions, and, needless to say, at this juncture such evidence would not properly be considered by the Court. Although these arguments might serve Defendants well as this litigation progresses, they do not justify dismissal here.

▋ Likewise, the Court declines to reject, as Defendants ask it to, the theory that Defendants had some duty to inform

---

**14.** In addition, it is difficult to reconcile Defendants' position with paragraph 78 of the Complaint, which alleges that Southern was charged with communicating with Plan participants about the Plan. (*Id.* ¶ 78.)

participants of material information respecting the Mirant investment outside the context of correcting affirmative misstatements. Although the Supreme Court has not yet resolved whether ERISA imposes such a duty on fiduciaries, *see Varity Corp.*, 516 U.S. at 506, 116 S.Ct. 1065 ("we need not reach the question whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative"), several courts have held that, at least in "special circumstances," such a duty may arise. *See, e.g., Hill*, 313 F.Supp.2d at 1368–69 ("Courts are now more willing to find an affirmative fiduciary duty to disclose information beyond the traditional duties to disclose specified in the statute or the common law obligation to respond to specific requests from plan participants or beneficiaries. [Cit.] However, this new affirmative duty to disclose has only been imposed in special circumstances with a potentially extreme impact on a plan as a whole, where plan participants generally could be materially and negatively affected.") (internal quotations omitted); *see also Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir.1993) (recognizing "an affirmative duty to inform when the [fiduciary] knows that silence might be harmful"); *In re Polaroid Erisa Litig.*, 362 F.Supp.2d at 478 ("This Court agrees with those decisions holding that an ERISA fiduciary has both a duty not to make misrepresentations to plan participants, and an affirmative duty to inform when the fiduciary knows that silence might be harmful.") (internal punctuation omitted); *In re AEP ERISA Litig.*, 327 F.Supp.2d at 832 (declining to reject duty to inform theory on motion to dismiss); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F.Supp.2d at 1182 (acknowledged "controversial and evolving" duty to disclose, and declined to dismiss plaintiffs' claim); *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F.Supp.2d

at 672–73 (refusing to dismiss "duty to inform participants" claim); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F.Supp.2d at 559 n. 63 & 562 (recognizing "the growing trend to impose and expand fiduciary duty to disclose where necessary to protect the plan participants[,]" and holding that the plaintiffs had successfully stated such a claim); *Stein v. Smith*, 270 F.Supp.2d 157, 174 (D.Mass. 2003) (observing that several Circuits have recognized duty to inform, and denying motion to dismiss plaintiffs' claim).

▆ The Court is disinclined to speculate about precisely what "special circumstances" need be present before the duty to inform participants will attach. Moreover, it recognizes that this case represents a somewhat novel situation in that the stock at issue is not that of any Defendant, but rather, that of a separate (albeit previously affiliated and closely connected) entity. That said, in light of the allegations that Defendants knew about, but failed to relate, massive scandals and illegal activities in place at Mirant that eventually bankrupted the company and significantly impacted the holdings of the Plan, the Court cannot conclude, as a matter of law, that no such theory could prove viable in this case. It joins many of its sister courts in holding that dismissal of such a claim, at this juncture, would be inappropriate. *See In re AEP ERISA Litig.*, 327 F.Supp.2d at 832; *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F.Supp.2d at 1182; *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F.Supp.2d at 672–73; *Stein v. Smith*, 270 F.Supp.2d at 174.

Defendants are not entitled to dismissal of Count III on grounds that it fails to state a claim upon which relief may be granted.

## V. Co–Fiduciary Liability

█ Defendants finally challenge Plaintiff's assertion that they may be held liable under a theory of "co-fiduciary liability." ERISA § 405(a) provides that a fiduciary can be liable for another fiduciary's breach in circumstances where (1) "he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;" (2) "by his failure to comply with [§ 404(a)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;" or (3) "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a). Defendants contend that such a claim is not viable here for four reasons. None persuade the Court.

First, Defendants take the position that Southern and SCS cannot be held liable on this theory because they are not themselves fiduciaries. This argument has already been rejected by the Court, as has their second argument that the Complaint fails to allege the requisite underlying breach of duty by another fiduciary.

Third, Defendants contend that the co-fiduciary claim is merely duplicative of the failure to monitor claim, and should be dismissed on that ground. As Defendants acknowledge, however, "[a] duty to monitor a fiduciary extends only to the fiduciaries that the particular defendant appointed." (*See* Mem. of Law in Supp. of the S. Co. Defs.' Mot. to Dismiss [27] at 36.) In the event Defendants are successful in showing that one or more of them exercised no such appointment power, Plaintiff may proceed on a co-fiduciary theory against those parties and attempt to demonstrate, *e.g.*, that these non-appointing fiduciaries nevertheless knew of other fiduciaries' breaches, but failed act reasonably to remedy them. *See* 29 U.S.C. § 1105(a)(3). Accordingly, the co-fiduciary theory, while related, is not merely "duplicative" of the failure to monitor claims.

Finally, Defendants contend that the Complaint lacks adequate factual detail to sustain a co-fiduciary claim. To their credit, some courts have dismissed co-fiduciary claims at the Rule 12(b)(6) stage, either because the claimant neglected to allege that the defendant had knowledge of another fiduciary's breach, or because the claim itself was too "conclusory." *See In re Syncor ERISA Litig.*, 351 F.Supp.2d at 980 (dismissing co-fiduciary claim because plaintiffs alleged "no facts to support" allegations that "Defendants knew of the breaches, participated in the breaches, or made no effort to remedy them"); *In re Sprint Corp. ERISA Litig.*, 388 F.Supp.2d at 1230–31 (dismissing co-fiduciary claim as too "conclusory" where plaintiffs "simply parrot[ed] the language of the co-fiduciary liability statute"); *Herrington*, 2004 WL 719355, *10, 2004 U.S. Dist. LEXIS 5461, at *29 (dismissing as too "conclusory" co-fiduciary claim that opaquely alleged defendants "knowingly undert[ook] to conceal Household's failure to loyally and prudently manage Plan assets"); *Stein*, 270 F.Supp.2d at 175 (co-fiduciary claims dismissed in view of inadequately pleaded allegations respecting defendants' knowledge); *In re McKesson HBOC, Inc. ERISA Litig.*, No. C00–20030 RMW, 2002 WL 31431588, **17–18, 2002 U.S. Dist. LEXIS 19473, at *55–56 (N.D.Cal. Sept. 30, 2002) (dismissing, with leave to amend, co-fiduciary claim that consisted of allegation: "The facts outlined in this Complaint demonstrate that the various fiduciaries who are Defendants in this action either had knowledge of the fiduciary breaches committed and failed to take reasonable efforts to remedy the breaches, or by acts or omissions, concealed relevant informa-

 

tion, which constituted breaches of fiduciary duty, in violation of ERISA § 405.").

After carefully reviewing the Complaint as a whole, the Court does not find the same deficiencies present here. Rather, Plaintiff has detailed Defendants' alleged fiduciary breaches, and has alleged their knowledge of other fiduciaries' unlawful acts along with facts (including, at the most basic level, knowledge that the enduring investment in Mirant was extremely ill-advised) that would tend to support such an averment. (*See* Am. Compl. ¶¶ 109, 201, 211.) No more is required of them to survive a Rule 12(b)(6) motion. *See In re Polaroid Erisa Litig.*, 362 F.Supp.2d at 479–80 ("Defendants argue that the Complaint does not sufficiently allege knowledge of co-fiduciary actions. However, the Complaint closely tracks the statutory language, which is sufficient."); *In re Honeywell Int'l ERISA Litig.*, 2004 WL 3245931, **14–15, 2004 Dist. LEXIS 21585, at *49–50 (sustaining co-fiduciary claim, reasoned: "Here, by alleging their participation in the alleged breaches, Plaintiffs have also alleged facts from which it can be inferred at least that all the Defendants knew of the alleged breaches and failed to make reasonable efforts to remedy them."); *Kling*, 323 F.Supp.2d at 144 ("The SAC alleges that these defendants failed to remedy breaches of the co-fiduciaries 'with knowledge of such breaches' ..., and that their failure to adequately monitor the appointed fiduciaries enabled those fiduciaries to breach their duties.... Hence, Kling has adequately pleaded breach of co-fiduciary duty against these defendants."); *In re AEP ERISA Litig.*, 327 F.Supp.2d at 833 (permitting co-fiduciary claim to proceed where primary fiduciary breach claims survived motion to dismiss); *In re CMS Energy ERISA Litig.*, 312 F.Supp.2d at 917 (same). Plaintiff's co-fiduciary theories will not be dismissed.

## Conclusion

The Southern Company Defendants' Motion to Dismiss Plaintiff's Amended Complaint [27] is, consistent with the foregoing opinion, **GRANTED in part and DENIED in part.** Plaintiff's Motion for Leave to File Supplemental Brief [58] is **GRANTED** *nunc pro tunc.*

**SO ORDERED** this *4th* day of October, 2005.